UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID JOHN MCGUIGAN,

    Petitioner,

v.                                                            Case No. 8:09-cv-254-T-24TBM;
                                                                                  8:07-cr-00083-T-24TBM-1

UNITED STATES OF AMERICA, et al.,

    Respondent.
_____/

## ORDER

This cause comes before the Court on the Government's motion to dismiss Petitioner, David John McGuigan's 28 U.S.C. § 2255 petition to vacate, set aside, or correct sentence. (Doc. 7.) Petitioner opposes this motion. (Doc. 11.)

## BACKGROUND

On March 15, 2007, Petitioner pled guilty, pursuant to a plea agreement, to a violation of 18 U.S.C. § 371, conspiracy to devise a scheme to defraud through wire fraud. (*United States v. McGuigan*, Case No. 8:07-cr-00083-24TBM.)  In the plea agreement, Petitioner "expressly waive[d] the right to appeal [his] sentence or to challenge it collaterally on any ground," with few exceptions. (*Id.* at 13.) Petitioner filed a § 2241 petition. (Case No. 8:08-cv-2430.) However, because Petitioner's filings demonstrated that he sought to vacate, set aside, or correct his sentence, rather than merely challenge the manner in which the sentence was executed, and because Petitioner informed the court that he wished to proceed under 28 U.S.C. § 2255, the § 2241 petition was closed and Petitioner filed the present § 2255 petition. (*See* 8:08-cv-2430, Doc. 43, for further details regarding the transfer of Petitioner's claims to the present case.)

The Government now seeks dismissal of the § 2255 petition based on the appeal waiver clause contained in Petitioner's plea agreement. Petitioner opposes this motion, claiming that fraud rendered the plea agreement invalid. He bases this claim on the grounds that 1) he was falsely promised total immunity for his crimes; 2) the attorneys for the United States promised that they would not prosecute Petitioner further if he could prove his innocence and then later "defrauded him of his right to prove his innocence" by refusing to examine the exculpatory evidence he uncovered; 3) the attorneys for the United States committed Fourth Amendment violations in obtaining evidence; 4) the prosecutor did not turn over *Brady* material prior to Petitioner's signing the plea agreement; and 5) facts stated during the sentencing hearing regarding monetary figures associated with his crime were incorrect.

## DISCUSSION

The Government moves for dismissal of the § 2255 petition based on Petitioner's plea-agreement waiver of his right to collaterally attack his sentence. In *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1997), the Eleventh Circuit held that a defendant can properly waive his right to appeal or collaterally attack his sentence through a waiver contained in his plea agreement, so long as that waiver is made knowingly and voluntarily. *Id.* at 1350. For later courts to enforce the waiver as knowing and voluntary, the court taking the plea must have specifically discussed the plea-agreement's sentence-appeal waiver with the defendant, or the record must demonstrate that the defendant clearly understood the significance of the waiver. *Id.* at 1351. In *Bushert*, the court found a defendant's waiver to be unenforceable because the district judge used "confusing" language in discussing the sentencing-appeal waiver with the defendant, stating that either the defendant or the government would "have the right to appeal

2

under some circumstances." *Id.* at 1352. The court should have "clearly conveyed to Bushert that he was giving up his right to appeal under most circumstances." *Id.* at 1352–53.

In *Williams v. United States*, 396 F.3d 1340 (11th Cir. 2005), the Eleventh Circuit upheld the district court's denial of a § 2255 motion based on 1) the waiver of appeal in the defendant's plea agreement, which stated that the defendant was waiving the right to both collateral and direct appeal, and 2) the discussion at the Rule 11 plea colloquy where the judge explained to the defendant that he was waiving the right to direct and collateral appeal, which the defendant said he understood. *See also United States v. Buchanan*, 131 F.3d 1005 (11th Cir. 1997) (holding that the defendant waived his right to collateral attack by virtue of the plea waiver and Rule 11 colloquy).

Here, Petitioner was a 39 year old male, who had attended college and was employed in the computer field. The plea agreement signed and entered into by Petitioner specifically included a section entitled "Appeal of Sentence Waiver." (Cr. Doc. 3, p. 13.) This section states that the defendant (Petitioner) "expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground," except grounds not applicable here. (*Id.*) During the Rule 11 plea colloquy, the Magistrate Judge pointed out the waiver in the plea agreement and explained it:

> Next. If you go to page 13, paragraph 5, there is a very important provision related to your rights to an appeal. This language is intended to restrict your rights to an appeal in this case . . . Essentially, this language says that there are three grounds that you can use to take an appeal and only three grounds. All other grounds are intended to be forfeited or to be waived. The three grounds that you can use in an appeal under this provision are: One, that your sentence is unlawful. If the Judge sentences you to more than the law allows, we call that an illegal or unlawful sentence and you can appeal it . . .

3

> The second way you could appeal would be if on your sentencing day the Judge calculated your guidelines at a particular level but didn't think that was enough punishment, she sentenced you in a higher range. You could appeal that higher sentence under this provision.
> The third way you could appeal would be if something about the sentencing process violated the [C]onstitution. And if that occurred, this language would allow you to raise what we call an Eighth Amendment Argument on appeal. However, except in those circumstances this language is intended to limit your right to an appeal, to take away your rights to raise any other issues.

(Cr. Doc. 38, pp. 28–29.) The Magistrate Judge then asked if Petitioner had any questions, to which Petitioner responded that he did not. (*Id.* at 30.) In addition to the discussion about the defendant's options for appealing his sentence, the Magistrate Judge asked other questions to ensure that the guilty plea was entered into knowingly and voluntarily, before he accepted the plea. (*See, e.g., id.* at 35–36.) This discussion was very similar to that engaged in by the Court in *Buchanan*, for example, where the Eleventh Circuit found that the defendant had waived his right to collaterally attack his sentence. *See id.* at 1007.[1]

This Court has reviewed the record and finds that the waiver of appeal language contained in Petitioner's plea agreement and the discussion of the waiver of appeal rights at the Rule 11 hearing were sufficient to create an enforceable waiver of Petitioner's right to collaterally attack his sentence.

Petitioner claims that his petition should nevertheless proceed, because his plea agreement was founded on fraud and trickery and is therefore invalid. He gives a number of reasons as to why he believes this is the case including immunity, loss of the opportunity to

---

[1] In both *Buchanan* and the present case, the judges taking the change of pleas discussed the circumstances under which the defendants could or could not attack their sentences, but neither judge used the word "collateral" in the discussion.

prove his innocense, a Fourth Amendment violation, a Brady violation, and the use of inaccurate facts at sentencing.

    A. <u>Immunity</u>

Petitioner seems to claim that, prior to signing the plea agreement, he was promised total immunity by Assistant United States Attorney Michael E. Runyon. First, it makes no sense that someone who was promised immunity from prosecution would then plead guilty. Second, in the agreement signed by Petitioner, it clearly states that he is pleading guilty without the benefit of any promises:

> The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and without promise of benefit of any kind (other that the concessions contained herein) . . .

(Cr. Doc. 3, p. 14.)

Further, at Petitioner's change of plea, the Magistrate Judge explained to Petitioner that "you're looking at a possibility of imprisonment in this case" and that "you could be facing a harasser [sic] longer sentence than you anticipated. And that might occur in this case. If it does, I want you to understand that you will not be able to back out of your plea merely because you expected something different." (Cr.Doc. 38, pp. 21–23) The Magistrate Judge went on to say, "your Plea Agreement actually offers you no guaranty. Theoretically under this Plea Agreement, you could receive the full five years of incarceration that is permitted under the statute . . . Do you understand that?" (*Id.* At 23–24.) Again, Petitioner responded that he understood. (*Id.* at 24.) Finally, the Magistrate Judge asked whether "anybody promised you anything other than what is set out in your Plea Agreement in order to get you to plead guilty

today," to which Petitioner responded "No, sir." (*Id.* at 29–30.) The judge asked "Has anybody promised you a particular sentence," and again Petitioner responded, "No, sir."

The fact that Petitioner's plea agreement and the plea colloquy made abundantly clear to him that he was pleading with the possibility of imprisonment and that no one had promised him anything other than what was in the plea agreement negate his claims of fraud as to the promise of immunity. In addition, the Petitioner never mentioned the alleged promises of immunity at either the Rule 11 hearing or the sentencing hearing.

B. Opportunity to Prove Innocence After Executing Plea Agreement

Petitioner states that prior to his pleading guilty, Assistant United States Attorney, Jay Trezevant told him that if he could prove his innocence, the United States would not prosecute Petitioner further. Petitioner claims that after executing a plea agreement, after pleading guilty, and after being sentenced, he found information that demonstrated his innocence but that his attempts to show the documents to the Assistant United States Attorneys who prosecuted him were rebuffed. Both in the plea agreement and at his change of plea hearing, Petitioner was informed that he had the right to plead not guilty and proceed to trial, rather than to plead guilty. He chose to plead guilty. Both in the agreement and at his Rule 11 hearing, he explicitly waived his right to a trial. Thus, there is absolutely no ground—even assuming the veracity of Petitioner's claims— for invalidating the plea agreement based on the Government's "defrauding [Petitioner] of the opportunity to prove his innocence."

C. Fourth Amendment Violations

Next, Petitioner claims that after signing the plea agreement (and after pleading guilty and being sentenced), he learned that evidentiary documents possessed by AUSA Trezevant,

6

which Mr. Trezevant claimed were taken from an abandoned building, were actually obtained through a Fourth Amendment violation. Assuming evidentiary documents were taken from a building that was not abandoned and were taken without a search warrant, and assuming the Petitioner had standing to contest the search, the Court fails to see how evidence that was never admitted in a trial that never occurred should invalidate Petitioner's signed and sworn acknowledgment of guilt. Petitioner lost the opportunity to challenge the admissibility of evidence when he pled guilty and waived his right to a trial. He was told at his plea colloquy that he could go to trial where his attorney "could try to keep out any evidence he didn't think was admissible," but Petitioner chose to plead. (Cr.Doc. 38, p. 15.) Further, to require rulings as to the admissibility of all evidence that might be used in a trial prior to a guilty plea would undermine the entire plea process

    D. <u>Brady Violation</u>

Petitioner also claims that the prosecutor failed to turn over *Brady* materials prior to the execution of his plea agreement. He states that the documents obtained via the violation of his Fourth Amendment rights contained exculpatory material. Because he asserts his Fourth Amendment rights with regard to the vaguely-referred-to documents, the Court construes his claim to be about documents belonging to Petitioner. Further, in Petitioner's § 2241 petition, he elaborates on his *Brady* claim. (8:08-cv-2430, Doc. 1, Ex. 1, pp. 17–19.) Petitioner states that the documents to which his *Brady* claim refers were letters and files that Petitioner knew existed and of which he knew the location, prior to their alleged confiscation by the Government. Thus, Petitioner was already aware of the "exculpatory" materials and had no need to be apprised of them by the Government. This does not constitute a valid *Brady* claim. In addition, there is no

7

requirement that *Brady* materials be turned over prior to the execution of a plea agreement.

      E.  <u>Inaccuracy of Facts at Sentencing</u>

Petitioner now claims that some of the monetary values associated with his crime were misstated at sentencing. Petitioner has lost his right to object to those facts now. Further, he pled guilty prior to the sentencing and therefore cannot use the restitution amount determined by the Court at sentencing as a basis for his claim that he was fraudulently induced to so plead.

## **CONCLUSION**

After review of the record, the Court finds that, because Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence in his plea agreement and because the waiver was fully explained to Petitioner at the Rule 11 hearing, the Government's motion to dismiss his § 2255 petition should be GRANTED. Accordingly, it is ORDERED AND ADJUDGED that the Government's Motion to dismiss the petition (Doc. 7) is GRANTED. The Clerk is directed to close to close Civil Case No. 8:09-cv-254-T-24TBM.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of April, 2009.

*[signature]*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of record
Pro se petitioner

8